UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KIM M., | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
| v. | )   1:21-cv-00133-GZS |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) |
| | ) |
|    Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the August 14, 2020, decision of the

Administrative Law Judge.  (ALJ Decision, ECF No. 9-2).[1]  The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of left ankle trimalleolar fracture status-post removal of hardware, obesity, anxiety disorder, and depressive disorder.  (R. 16.)  The ALJ further found that despite Plaintiff's impairments, Plaintiff has the residual functional capacity (RFC) to perform light work except that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours and stand and/or walk for six hours in an eight-hour workday; unlimited pushing and/or pulling; should never climb ladders, scaffolds or ropes, but can occasionally climb ramps and stairs and occasionally balance and stoop; can understand, remember and carry out detailed to non-complex tasks; can sustain concentration, persistence and pace during two-hour periods of an eight-hour workday and forty-hour workweek; and can tolerate occasional and superficial interaction with the general public and adapt to routine changes.  (R. 25.)

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including the representative occupations of marker, packager, and grader/sorter. (R. 38-39.) The ALJ determined, therefore, that Plaintiff was not disabled.

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues (1) the ALJ erred when he failed to find Plaintiff's borderline intellectual functioning to be a severe impairment at step 2 of the sequential analysis;[2] (2) the ALJ relied on opinion evidence based on an incomplete record; (3) the ALJ improperly rejected and failed to address sufficiently the post-hearing affidavit of a vocational expert; and (4) the ultimate decision was not constitutionally valid.

**A. Step 2**

Although Plaintiff did not list borderline intellectual functioning among her physical

---

[2] Plaintiff also references as another purported error the ALJ's failure to find fibromyalgia a medically determinable impairment (Statement of Errors (SOE) at 3, ECF No. 11), but does not develop her argument on this point. Plaintiff therefore has waived the argument. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived").

or mental conditions in her Disability Report (R. 315), she subsequently identified the condition, citing her performance on a Wechsler Adult Intelligence Scale-IV test administered to Plaintiff in November 2014 by psychologist Donna Gates, Ph.D. (R. 1365-68.) Plaintiff achieved a full-scale IQ score of 77, which placed her in the 6th percentile. (*See* R. 1358.) Estimating Plaintiff's intellectual functioning to be in the low average range "[b]ased on her presentation style," Dr. Gates diagnosed Plaintiff with borderline intellectual functioning. (R. 1368.) The ALJ found that Plaintiff's borderline intellectual functioning was not a medically determinable impairment for the claimed period. (R. 20.)

In his assessment of Plaintiff's intellectual functioning, the ALJ noted that Plaintiff did not list borderline intellectual functioning among her mental or physical conditions limiting her ability to work (R. 315); Plaintiff did not reference the condition during her hearing testimony; Plaintiff owned and operated "every aspect" of a hair salon business for nearly 14 years[3] (R. 310-11); Plaintiff graduated from high school without special education (R. 316); and Plaintiff spent several hours each day reading and checking her emails without any intellectual difficulties. (R. 20.) The ALJ also observed that Dr. Gates, after conducting another psychological consultative examination of Plaintiff in March 2019, again estimated Plaintiff to have average to low average intellectual functioning but

---

[3] Plaintiff filed a post-hearing statement recounting her difficulties in high school and cosmetology school, as well as in her salon business. (R. 415-17.) The ALJ observed this was "the first time" in the administrative process that Plaintiff made such claims. (R. 20.)

The vocational expert who testified at hearing classified Plaintiff's prior work experience operating her own salon as "skilled," with a specific vocational preparation (or SVP) level of 6, while the representative jobs identified by the vocational expert based on Plaintiff's RFC are all classified as SVP level 2. (R. 76-77.)

no longer listed borderline intellectual functioning as a diagnosis. (*Id*.; *see* R. 990-91.) During Dr. Gates's second examination, Plaintiff reported driving to the consultation and showed Dr. Gates her artwork, which Dr. Gates described as "accomplished, detailed, and textured." (R. 20; *see* R. 990.)

The ALJ also considered the evaluation of Plaintiff by Alexander Reeves, M.D., a neurologist, who examined Plaintiff in February 2019. The ALJ noted that Dr. Reeves' description of Plaintiff as a "well-spoken individual" was consistent with her presentation, vocabulary, and grammar at the hearing. (R. 20; *see* R. 1108.) The ALJ cited progress notes from another healthcare provider, which notes consistently revealed mental status examination findings of an average fund of knowledge, coherent thought processes, and grossly intact short- and long-term memory, focus, and concentration (R. 20; *see, e.g*., R. 464, 470, 474, 486, 756, 997, 1587.)

At Step 2, an impairment is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 24 (1st Cir. 1986) (quoting Social Security Ruling 85-28). "Standing alone, IQ scores are not inherently indicative of" borderline intellectual functioning. *Julia C. v. Saul*, No. 2:18-cv-00334-DBH, 2019 WL 3855313, at *2 (D. Me. Aug. 16, 2019) (*aff'd*, Oct. 17, 2019). The ALJ's determination that Plaintiff's intellectual functioning does not constitute a severe impairment is supported by substantial evidence. The ALJ cited relevant medical evidence and evidence of Plaintiff's functioning to support his conclusion. Plaintiff,

5

moreover, has not identified any additional restrictions that her borderline intellectual functioning would impose beyond the restrictions included in the ALJ's RFC determination.[4] Remand, therefore, is not warranted. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

**B. RFC**

Plaintiff contends the ALJ's RFC finding is not supportable because the ALJ relied in part on the opinion of a state agency medical consultant who reviewed an incomplete record and, therefore, the ALJ improperly interpreted raw medical data.

The ALJ found the opinion of state agency medical consultant James Hall, M.D., to be generally persuasive. (R. 35.) Dr. Hall concluded that Plaintiff could perform work at the light exertional level, with limitations the ALJ included in the RFC. (R. 90.) The ALJ found less persuasive the opinion of state agency medical consultant Edward Ringel, M.D., who limited Plaintiff to four hours standing and/or walking in a workday.[5] (R. 35.) The ALJ determined the limitation was unsupported by the evidence, noting that the record

---

[4] The vocational expert testified that "an IQ is just a screenshot" and "there are more components to learning ability than just an IQ score," noting that she had placed persons with IQs below 77 in occupations similar to the representative jobs of marker, packager and grader/sorter. (R. 82.) The vocational expert further testified that she did not "find a direct correlation between IQ score and the learning aptitude assignment for any occupation." (*Id.*)

[5] The ALJ also questioned Dr. Ringel's assessment of additional environmental limitations attributable to Plaintiff's migraine headaches. (R. 35, 109.)

reflected relatively minimal treatment with specialists over the relevant period. (*Id.*, *see* R. 108-09.)

Plaintiff contends the ALJ could not supportably rely on the state agency consultant because the consultant (Dr. Hall) was not aware that in August 2019, Dan Benson, D.P.M., prescribed an "Arizona" brace for Plaintiff's left foot/ankle, that following the consultant's assessment, Plaintiff's insurer approved the purchase of a rollator walker for Plaintiff, and that one of Plaintiff's treating physicians, Brandi Wiseman, D.O., directed her to return to her orthotist for a right "Arizona" brace. (R. 1115, 1135.) Plaintiff also contends that the records of Plaintiff's primary care provider, Loraine Paradis, D.O., support her challenge to the ALJ's RFC determination. The record reflects that in January 2020, after Plaintiff began using the left ankle brace but before she received her right ankle brace, Plaintiff reported to Dr. Paradis that she was falling frequently. (R. 29, 1411.)

In support of his RFC determination, the ALJ noted that Dr. Wiseman's initial examination of Plaintiff in June 2019, which was prior to the prescription for the brace or the walker, showed Plaintiff had normal gait, equal stride length, good heel strike and toe clearance, and the ability to heel and toe walk (R. 28, 1073-74); that although Dr. Wiseman's examination in July 2019 revealed decreased motor strength in Plaintiff's left dorsi and plantar flexion, Plaintiff reported doing "well" with the left foot brace in October 2019 (R. 28, 1135); and that while in February 2020, Plaintiff reported worsening ankle pain to Dr. Wiseman, Dr. Wiseman found Plaintiff had good heel strike and toe clearance bilaterally with the bilateral Arizona braces. (R. 29, 1128-33.) The ALJ also referenced the results of a consultative examination of Plaintiff by Fred Fridman, D.O., in February 2019,

7

which showed slightly limited range of motion in Plaintiff's left ankle, but steady and symmetric gait without the use of assistive devices, full motor strength in all extremities and normal deep tendon reflexes. (R. 29, 981-86.) Furthermore, Dr. Paradis' examination in January 2020 revealed no edema, erythema, increased warmth or swelling in an examination of Plaintiff's lower extremities, and pain only on palpation of Plaintiff's inner right calf. (R. 29, 1412.) Finally, the ALJ found that while Plaintiff's insurer authorized the purchase of a rollator, the record lacked any evidence that Plaintiff used it when she attended appointments with Drs. Wiseman and Paradis. (R. 29.)

The ALJ's reliance on the opinion of the state agency consultant is supportable. After thoroughly discussing the medical evidence available to the consultants and the evidence generated after the consultants' review, the ALJ noted Plaintiff had "relatively minimal treatment with specialists during the period at issue." (R. 29.) As to the evidence generated after Dr. Hall's review, the issue is not whether there is "any assurance that [the consultant] would not have changed [his or her] opinions," it is, rather, whether review of the pertinent records "would necessarily have altered [his or her] opinions in a manner more favorable to" Plaintiff. *O'Bannon v. Colvin*, No. 1:13-CV-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (collecting cases). The ALJ appropriately acknowledged and extensively discussed the subsequent evidence, and supportably determined did not warrant a different RFC. (R. 28-29, 35-36.) Plaintiff has not demonstrated that Dr. Hall's review of the additional information would have altered his opinion in a manner more favorable to her. The ALJ, therefore, did not err in relying upon Dr. Hall's opinion.

**C. Post-Hearing Affidavit**

Plaintiff argues that remand is required because the ALJ did not admit into evidence and properly consider the vocational expert affidavit filed by Plaintiff after the hearing.

At step 5 of the evaluation process, the Commissioner has the burden to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical-Vocational Guidelines, 20 C.F.R. Part 202, Subpart P, Appendix 2, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982).

The administrative process permits a claimant to question the vocational expert at the hearing, and to clarify or develop the vocational expert's testimony. Additionally, Social Security Ruling 96-9p provides that, "[w]henever a VE is used, the individual has the right to review and respond to the VE evidence prior to the issuance of a decision." 1996 WL 374185, at *9 n.8 (S.S.A. July 2, 1996).

Plaintiff's counsel questioned the vocational expert at the hearing.[6] (*See* R. 77-83.) Following the hearing, Plaintiff submitted an affidavit from another vocational expert,

---

[6] Counsel cross-examined the vocational expert on several topics, including the reduction in job numbers for the representative positions if Plaintiff's RFC limited her to only four hours of standing and walking instead of six (R. 77-78), the effect of an additional restriction on reaching (R. 79-80), the effect on Plaintiff's employability if she were off-task more than 15% of the workday (R. 80), the sources of the vocational expert's job numbers (R. 80-81), and the effect of intelligence test scores on employability (R. 81-83).

9

David Meuse, who offered the following opinions in response to the vocational expert's testimony: (1) Plaintiff's performance on an IQ test placed her in the 6th percentile, which is inconsistent with the qualifications listed in the DOT definitions of the marker, packager and grader/sorter jobs relied upon by the ALJ (R. 419, ¶¶ 12-16); (2) the vocational expert misidentified DOT No. 525.687-118 as "packager," when it is labeled "tier," and the vocational software program Job Browser Pro provides that there are only 2,609 such jobs nationally (*id.*, ¶¶ 15, 25); (3) the vocational expert's testimony regarding the number of available grader/sorter jobs is incorrect, because the vocational software Job Browser Pro reported only 623 such positions nationally (*id.*, ¶ 17); (4) a restriction to only occasional balancing is inconsistent with light work (R. 419-20, ¶¶ 18-22); (5) a person who needs to elevate their legs would not be employable at the light level (R. 420, ¶ 23); and (6) the number of marker jobs to which the vocational expert testified is inaccurate, because, in Mr. Meuse's experience, it would be unusual for a person performing the job to remain seated for four hours and engaged solely in marking (*id.*, ¶¶ 24-26).

The ALJ refused to admit Mr. Meuse's affidavit into evidence, although he marked it as an exhibit for purposes of identification. (R. 13; *see* 418-20.) The ALJ found that Plaintiff had not complied with the "five-day rule," which requires that evidence be provided to an ALJ no later than five days before the scheduled hearing, subject to limited exceptions. 20 C.F.R. § 404.331(a) (2016). The ALJ wrote:

> Of note, Mr. Meuse has submitted a similar statement in other cases for over a year. The representative [did] not disclose him as a witness. [Mr. Meuse] does not address what [Plaintiff] can do given the [RFC], only advocating against the vocational expert who testified under oath and was subject to cross-examination. Contrary to the argument of counsel, SSR 96-9p,

10

> Paragraph 8 does not allow for such "rebuttal" evidence. It does not mention rebuttal evidence. The paragraph simply provides that the claimant be afforded the opportunity to respond to vocational evidence used by the agency, which can be by testimony or interrogatory, prior to decision. In this case, the vocational expert testified at hearing and was subject to cross-examination. The undersigned did not use post-hearing interrogatories to the vocational expert. SSR 96-9p, furthermore, simply provides that the representative could request a supplemental hearing if post-hearing interrogatories were used.

(R. 13.)

While he did not admit the Meuse affidavit into evidence, the ALJ found the Meuse "statement" unpersuasive because Mr. Meuse did

> not address what [Plaintiff][ can do given the [RFC], only advocating against the vocational expert who testified under oath and was subject to cross-examination. Of note, Mr. Meuse [found] occasional balancing to be inconsistent with light work, based upon a definition found within the DOT. Social Security, however, has SSR 85-15, which specifically provides that occasional balancing does not significantly impact the ability to work.

(R. 39.)

Defendant argues the ALJ properly rejected the Meuse affidavit because Plaintiff failed to comply with the regulatory requirements for evidence submitted beyond the "five day rule," which requirements provide that an ALJ "will accept" evidence submitted after a hearing if (1) there is a "reasonable possibility that the evidence … would affect the outcome" and (2) a factor beyond the claimant's control prevented submission of the evidence before the hearing. 20 C.F.R. § 404.331(c) (2016).

This Court, for sound reasons, has determined that "*[b]y definition*, rebuttal evidence of this kind could not have been submitted earlier, since the claimant has no clue to what the vocational expert will testify about until the end of hearing…. Thus, the late

11

submission of [the] affidavit could be viewed as unavoidable" under the regulation. *Patrick S. v. Saul*, No. 1:18-cv-289-DBH, 2019 WL 3814283, at *3 (D. Me. Aug. 14, 2019) (emphasis in original) (quoting *Palombo v. Berryhill*, No. 17-cv-284-LM, 2018 WL 3118286, at *5 n.7 (D.N.H. June 25, 2018) (internal citations and quotation marks omitted). An ALJ, therefore, "cannot categorically refuse a request to consider evidence simply because it is submitted after the hearing has concluded." *Patrick S.*, 2019 WL 3814283, at *3; *see also, Randi-Lyn D. v. Kijakazi*, No. 1:20-cv-00370-JAW, 2021 WL 5050060, at *3 (D. Me. Oct. 31, 2021) (*aff'd*, Dec. 2, 2021).[7]  Because testimony that responds to evidence presented by a vocational expert at hearing "often 'cannot be anticipated prior to hearing,'

---

[7] Defendant suggests that given the facts of this case, the Court should adopt the reasoning of the court in *Brownwell v. Berryhill*, Civil Action No. 17-11462-FDS, 2018 WL 615662 (D. Mass. Jan. 29, 2018). The reasoning of *Brownwell*, however, does not support a different approach or result in this case. In *Brownwell*, the plaintiff submitted an affidavit from Mr. Meuse following the hearing and further requested a supplemental hearing. 2018 WL 615662, at *1. The supplemental hearing was held and at the end of it, the plaintiff requested that the record be held open for an additional ten days to submit a post-hearing brief. *Id*. The plaintiff also "assured the judge he would not submit any new affidavits." *Id*. The ALJ gave the plaintiff over two weeks to submit the brief and indicated that he expected the written decision to issue in a month or two. *Id*. Three months later, and a few days before the ALJ issued his decision, the plaintiff submitted a further affidavit from Mr. Meuse. *Id*. The ALJ did not consider this affidavit, nor did he include it in the administrative record. *Id*. The Appeals Council acknowledged the affidavit but did not make it part of the record, finding that the affidavit did not relate to the period at issue in the case. *Id*. On appeal to the District Court of Massachusetts, the plaintiff moved for an order to include the affidavit as part of the administrative record pursuant to 42 U.S.C. 405(g), which provides that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id*. at *1-2. As the court noted, the plaintiff was "*correct that he [could] submit rebuttal evidence and that rebuttal-type evidence is not required to be submitted at least five days before a hearing*" under the "five-day rule," 20 C.F.R. § 405.331(a). *Id*. at *2 (emphasis added). The court denied the plaintiff's motion, however, finding that plaintiff "provided no authority for the proposition that he [could] ignore the deadlines set by the ALJ for submission of such evidence and file new materials at any time." *Id*. The court noted that the plaintiff never explained why the second affidavit was submitted late, and observed that because he had hired Mr. Meuse prior to the supplemental hearing, he presumably could have elicited the testimony within the time allotted by the ALJ. *Id*. The court, therefore, concluded that the plaintiff "failed to show good cause for the Court to order that this material be included." *Id*.

it will often have to be submitted after the hearing has been completed." *Patrick S.*, 2019 WL 3814283, at *3 (citing SSR 96-9p n.8, 1996 WL 374185 and quoting *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010)). Plaintiff had "a right to submit rebuttal evidence after [the] hearing." *Randi-Lyn D.*, 2021 WL 5050060, at *4 (quoting *Pate v. Saul*, Civil Action No. 19-cv-11594-PBS, 2020 WL 3105075, at *10 (D. Mass. June 11, 2020). The ALJ erred when he refused to admit the Meuse affidavit into evidence. *Randi-Lyn D.*, 2021 WL 5050060, at *4.

Although the ALJ did not admit the affidavit into evidence, the ALJ wrote that he found Mr. Meuse's "statement" to be "not persuasive" and discounted Mr. Meuse's opinion regarding the effect of Plaintiff's limitation to occasional balancing on her ability to do light work. (R. 39.)[8] The ALJ, however, did not address Mr. Meuse's opinions on the number of jobs available in the national economy for the positions identified by the VE.[9]

---

[8] Social Security Ruling 83-10 defines light work, in part, as requiring the ability to walk or stand "a good deal," and defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. The Department of Labor's Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SOC/DOT) defines "balancing" as "[m]aintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats." SOC/DOT, App. C at C-3.

As this Court has noted, "a plain reading of the SOC/DOT reveals that the balancing limitation applies to 'narrow, slippery, or erratically moving surfaces.'" *Jennifer C. v. Kijakazi*, No. 2:20-cv-00229-NT, 2021 WL 4143913, at *4 (D. Me. Aug. 25, 2021). This Court has held that light work does not require an individual to work on such surfaces. *Id*. Multiple other courts have upheld light work RFCs that include a limitation to occasional balancing. *Id*. (collecting cases).

[9] The ALJ did note, although not in the context of the Meuse affidavit, that the VE testified that she relied upon the then-current and updated version of Job Browser Pro, as well as the Occupational Employment Quarterly, to derive the job numbers. (R. 39.) Noting that Plaintiff's counsel had an opportunity to cross-examine the vocational expert on her job number sources, the ALJ overruled Plaintiff's objections "regarding the vocational expert's qualifications to provide the incidence of job numbers and her ability to furnish the sources upon which she relies." (*Id.*)

13

The number of available jobs is an essential question in a disability determination. Mr. Meuse does not simply offer a contrary opinion as to the number of available jobs. Mr. Meuse asserts in part that according to a source (Job Browser Pro) the VE used for the job numbers to which she testified (R. 80), the number of jobs available for the identified jobs, as Mr. Meuse asserts the jobs are defined under the applicable DOT Code, is significantly less than the number reported by the VE. While it is within an ALJ's discretion "to evaluate and resolve the conflicting opinions of opposing vocational experts" and while an ALJ can consider "a multitude of factors, including the knowledge, expertise and prior experience of the vocational experts" in resolving any conflicts, "[a] reviewing court should [] remand when an ALJ has not considered all relevant factors in taking action because a decision made by ignoring relevant evidence is not conclusive.'" *Zaragoza v. Saul*, 474 F.Supp.3d 378, 384 (D. Mass. 2020) (internal quotation marks and citations omitted).

Here, particularly as to the number of jobs available, the ALJ did not sufficiently discuss and thus did not resolve the conflict between the two vocational experts. Because the ALJ did not address the conflicting opinions, the Court cannot assess whether the ALJ considered the factors relevant to the resolution of the different opinions. The ALJ's failure to admit the affidavit into evidence and to address Mr. Meuse's challenge to the VE's testimony regarding the number of available jobs cannot be considered harmless error. If Mr. Meuse's affidavit testimony is sound, Defendant arguably would have failed to establish that Plaintiff can perform work that exists in significant numbers in the national economy. Remand, therefore, is warranted. *Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir. 2001) ("[w]hen an agency has not considered all relevant factors in taking action, or has

provided insufficient explanation for its action, the reviewing court should remand the case to the agency").

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.[10]

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of January, 2022.

---

[10] Because I have recommended remand on one other grounds, I did not address Plaintiff's constitutional argument. *See Greenless v. Almond*, 277 F.3d 601, 605 - 607 (1st Cir. 2002) (court should avoid constitutional question if case can be resolved on other grounds supported by the record.)